**NEXTEL PARTNERS, INC., Plaintiff,**

v.

**TOWN OF AMHERST, N.Y. and Zoning Board of Appeals of the Town of Amherst, New York, Defendants.**

No. 02–CV–6483 CJS(F).

United States District Court,
W.D. New York.

March 4, 2003.

Karl S. Essler, Fix Spindelman Brovitz & Goldman, P.C., Rochester, NY, for the Plaintiff.

E. Thomas Jones, J. Matthew Plunkett, Deputy Town Attorney, Town of Amherst, Williamsville, NY, for the Defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

Before the Court is plaintiff's motion (docket # 7) for summary judgment on its complaint (docket # 1), which alleges that defendants have violated the Telecommunications Act of 1996 and state law by failing to permit Nextel Partners, Inc. ("Nextel") to add cellular telephone antennae to an existing guyed tower in the Town of Amherst, New York ("Town"). For the reasons stated below, the Court grants Nextel's motion, and orders the filing of additional information pertinent to Nextel's motion for a reasonable attorney's fee and costs pursuant to 42 U.S.C. § 1988.

## SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir.

2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir.2001); *International Raw Materials,*

*Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996).

## BACKGROUND

"When a party has moved for summary judgment on the basis of asserted facts supported as required by Federal Rule of Civil Procedure 56(e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir.1992). Here, Nextel has filed a statement of facts as required by the local rules,[1] and defendants, represented by counsel admitted[2] to practice in this

---

1. W.D.N.Y. Local Rule 56 states, in pertinent part, "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party...."

2. Mr. Plunkett was admitted on August 7, 1984 and Mr. Jones on March 3, 1982, according to the Clerk's records.

Court, have not, nor have defendants controverted any of Nextel's asserted facts. Therefore, in accordance with the rules set out above, the Court will deem Nextel's statement of facts admitted. There being no issue of material fact, the Court must determine whether defendants have shown entitlement to judgment as a matter of law.

Nextel is a wireless telecommunications company that is authorized, pursuant to a license from the Federal Communications Commission, to offer wireless communication services to consumers throughout New York State and the United States. Nextel has a proprietary network that allows it to offer digital cellular communications, data transmission, as well as its Direct Connect feature that allows customers to connect to other Nextel subscribers with a simple push of a button. Given that Nextel's wireless network is proprietary and uses a different technology than other wireless service providers, Nextel's customers are not able to "roam" by using another provider's network in order to access a wireless communications network.

Defendants are the authorized municipal representatives for the Town of Amherst and are responsible for implementing and enforcing zoning regulations, along with granting relief from such regulations when warranted. In addition, defendant Zoning Board of Appeals ("ZBA"), is the body duly authorized by the Town of Amherst Zoning Code to issue special use permits upon demonstrated compliance with applicable standards.

On or about March 25, 2002, Nextel submitted its initial application to collocate its antennae on an existing tower owned by Crown Castle, Inc. and located at 1210 New Road in the Town of Amherst. The application sought a special permit to install Nextel's antennae at a height of 115 feet and locate an equipment shelter within the leased area on the ground. Nextel's antennae would have been the fourth set of antennae on this tower (the others belonging to Verizon Wireless, Cricket and Voicestream Wireless) and would be located at a height below the three existing providers.

Defendant ZBA held a public hearing on the application on or about May 21, 2002. Subsequently, in a letter dated May 22, 2002, the ZBA informed Nextel that it denied its special use permit request to collocate antennae on the tower at 1210 New Road citing that no need for the facility was established by Nextel. The ZBA subsequently voted to vacate its denial of Nextel's special use permit application and voted to adjourn the matter to the August 20, 2002 meeting to allow Nextel to submit further documentation on the need for the facility.

Nextel thereafter submitted additional information with a narrative that provided further details regarding the need for Nextel to collocate its antennae on the tower at 1210 New Road. Included in this application were radio frequency ("RF") propagation studies which provided a visual representation of the areas where Nextel maintained that its service was inadequate and where customers would be unable to connect to Nextel's wireless network. No other information was submitted to the ZBA contradicting this information or challenging its technological foundation.

A second public hearing was held on the application on August 20, 2002. At this public hearing, Nextel presented evidence explaining that, because of technological differences between its wireless service and that of other providers, Nextel customers do not have the ability to "roam" onto other wireless systems in areas where Nextel's coverage is inadequate. No other information was submitted to the Zoning

Board contradicting this information or challenging its technological foundation.

Subsequently, in a letter dated August 21, 2002, the ZBA informed Nextel that it declined issuing a "Negative Declaration" under the New York State Environmental Quality Review Act. There is no dispute that this denial of the negative declaration was tantamount to a denial of Nextel's special use permit application.

By way of explanation, a "Negative Declaration" is a notice that the ZBA has determined that a proposed action will not have a significant adverse effect on the environment and is issued pursuant to Town of Amherst Local Law # 3–82, and 6 N.Y.C.R.R. Part 617. *See, e.g.*, O'Neil aff. Ex. L. The New York regulation [3] states, in pertinent part,

> on the basis of the draft [Environmental Impact Statement], and comments made thereon, the lead agency has determined that the action will not have a significant adverse impact on the environment. A negative declaration must then be prepared, filed and published in accordance with section 617.12 of this Part.

6 N.Y.C.R.R. § 617.9(a)(5)(i)(b) (2003). The August 21, 2002 letter went on to explain that the ZBA was basing its denial of a negative declaration on a suggestion from the Town Planning Department that replacing the existing guyed wire tower with a new monopole tower or other non-lattice structure would "be more closely in harmony with the general purposes and intent of this ordinance." However, apart from its suggestion regarding replacement of the existing tower, the Planning Department had determined that granting Nextel's application and allowing the placement of the additional antennae on the tower would not have any significant impacts, and, in fact, recommended that issuance of a negative declaration.

Moreover, it is undisputed that at its March 19, 2002 meeting, the ZBA voted to approve a special use permit for Voicestream Wireless to collocate its antennae on the existing tower at 1210 New Road, at a height above that proposed by Nextel. VoiceStream is a competing wireless communications company to Nextel and offers services that are functionally equivalent to those offered by Nextel. The ZBA's approval included the adoption of a negative declaration finding no significant adverse impacts from the VoiceStream proposal.

## DISCUSSION

In its complaint, Nextel raises four causes of action: (1) the ZBA violated Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 322(c)(7) (2002), by unreasonably discriminating among providers of functionally equivalent wireless services, and by prohibiting wireless services in the Town of Amherst; (2) the ZBA's refusal to take any further action on Nextel's special use permit application violates Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 322(c)(7) (2002), which requires action within a reasonable time, and requires that denials be in writing and supported by substantial evidence contained in a written record; (3) the ZBA acted illegally and in excess of the powers granted to it by New York law in that it has failed to reach a final decision on Nextel's application for a special use permit; and (4) the ZBA's failure to comply with the Telecommunications Act of 1996 occurred while the ZBA was acting under color of state law and has deprived Nextel of rights, privileges and immunities secured by the Constitution and laws of the United States and New York, thereby warranting the imposition of money damages "in excess of any jurisdictional limits" pursuant to 42 U.S.C. § 1983 and a rea-

---

**3.** Neither party provided the Court with a copy of the local law.

sonable attorney's fee pursuant to 42 U.S.C. § 1988. The Court will address each contention, below, including Nextel's demand for injunctive relief.

**The ZBA Unreasonably Discriminated Against Nextel and its Action has the Effect of Prohibiting Services in Violation of the Telecommunications Act of 1996**

■ Nextel advances two arguments in support of this claim. First, Nextel maintains that defendants unlawfully discriminated against it when they denied its second application for a special use permit. Second, Nextel argues that the ZBA's action amounts to a prohibition of services in the Town in violation of the Telecommunications Act of 1996 ("TCA").

With regard to the first argument, Nextel points out that the ZBA approved VoiceStream Wireless's Special Use Permit application on March 19, 2002, with the only condition being that VoiceStream had to modify its structural analysis to include the adequacy of the foundations of the tower. VoiceStream's approved application sought to collocate antennae at the 137–foot level of the tower at 1210 New Road, the very same tower at which Nextel was seeking to collocate antennae at the 115–foot level. Defendants respond only with an assertion that the zoning ordinance "expresses a clear preference for monopole towers and strongly disfavors lattice towers." Plunkett aff. ¶ 4.

■ The TCA, codified at 47 U.S.C. § 151, et seq., is an omnibus overhaul of the federal regulation of communications companies, and intends:

to provide for a pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ... by opening all telecommunications markets to competition....

H.R. Conf. Rep. No. 104–458, at 113 (1996), *reprinted in* 1996 U.S.C.C.A.N. 124, 124. *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 637 (2d Cir.1999). The TCA provides that any state or local government regulation of the placement, construction and modification of personal wireless service facilities shall not unreasonably discriminate among providers of functionally equivalent services. 47 U S.C. § 332(c)(7)(B)(i)(I) (2002). Consequently, as a threshold matter, Nextel must show that defendants discriminated among providers of functionally equivalent services and that the providers were treated unequally. *Nextel Partners of Upstate New York, Inc. v. Town of Canaan,* 62 F.Supp.2d 691, 698 (N.D.N.Y.1999). Although the TCA explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed, such discrimination must be reasonable. *Willoth,* 176 F.3d at 638; *AT & T Wireless PCS, Inc. v. City Council of Va. Beach,* 155 F.3d 423, 427 (4th Cir.1998); *Smart SMR of New York, Inc. v. Zoning Comm'n of the Town of Stratford,* 995 F.Supp. 52 (D.Conn.1998).

Defendants have established a town zoning ordnance regulating telecommunications services. Section 203–8–19 of that ordinance provides in pertinent parts as follows:

8–19.3 The site plan for the proposed Telecommunication Facility shall be reviewed by the Planning Department before a hearing is held by the Zoning Board of Appeals. The Planning Department shall submit a written report to the Zoning Board of Appeals containing its analysis of the proposal under the standards set forth in § 203–9–4–4.1 of this ordinance. Site plan submittal and review under § 203–9–2 of this ordinance shall not be required.

8–19.4 No Special Use Permit or modification of the conditions of a current Special Use Permit relating to a Telecommunication Facility shall be authorized by the Zoning Board of Appeals unless it finds that such Telecommunication Facility:

A. Is necessary to meet current or expected demands for the services supported by the telecommunication facility for that applicant's network;

B. Conforms with all applicable regulations promulgated by the Federal Communications Commission;

C. Is designed and constructed in a manner which minimizes its visual impact to the extent practical;

D. Complies with all other requirements of this ordinance;

E. Is an appropriate site within the technically feasible area for the location of the Telecommunication Facility.

8–19.5 The shared use of existing Telecommunication Facilities or other structures shall be preferred to the construction of new such facilities. Any application for a Special Use Permit or modification of the conditions of a current Special Use Permit shall include proof that reasonable efforts have been made to co-locate with an existing Telecommunication Facility or upon an existing structure. . . .

Code of the Town of Amherst, New York, §§ 203–8–19.4 & 203–8–19.5 (1996), *available at* http://www.amherst.ny.us/ Govt/govt.htm.

The Section 203.8–19.3 report of the Planning Department Staff, dated August 16, 2002, found that Nextel's proposed addition of twelve antennae on the existing guyed tower "will be in harmony with the general purposes and intent of this ordinance." Planning Department Staff memo to Susan K. Jaros, Town Clerk (Aug. 16, 2002) at 1 (attached to O'Neil aff. Ex. H).

In addition, the staff wrote, "[t]he project would be more closely in harmony with the general purposes and intent of this ordinance if the existing lattice tower were replaced with a new monopole tower." *Id.* The report concluded that, "[Nextel's] application is recommended for approval with the recommendation that the existing lattice tower be replaced with a new monopole tower or other non-lattice structure of equal or greater aesthetic appeal." *Id.* at 2. The report included a "Negative Declaration" for the ZBA's use.

Defendants, in opposing Nextel's application for summary judgment, rely on the *Willoth* case. The discrimination encompassed in that law suit involved a claim by Sprint that the municipality treated its application and that of another wireless services provider, Frontier, differently. Sprint claimed that it was subjected to a lengthy environmental review process, and that Sprint was not afforded the same opportunity as Frontier to build the requisite number of telecommunications facilities to provide wireless service coverage inside buildings throughout the municipality. The Second Circuit in *Willoth* upheld the district court's rejection of Sprint's discrimination claim, stating that local governments may reasonably take the location of a telecommunications tower into consideration when deciding whether to require a more intense review of the application, and that they may reject an application based upon its impacts on the environment, or on the character of the community, even though such a denial may result in discrimination between providers of functionally equivalent services. *Willoth,* 176 F.3d at 639.

However, the *Willoth* case is clearly distinguishable from the case at bar. Unlike *Willoth,* which involved applications for three new towers, Nextel here simply sought a special permit to collocate its

antennae on an existing tower that already has antennae from three different wireless services providers. Approximately one week prior to the filing of Nextel's application to collocate antennae on the existing tower at 1210 New Road, the ZBA approved the special permit for Voicestream to place similar antennae at a greater height on the 1210 New Road existing tower. The record does not suggest to the Court that the addition of Nextel's antennae would have any significant impacts on the environment or the character of the community, and certainly none that would distinguish Nextel's application from that of VoiceStream. In fact, the only citizen to comment on the aesthetics of the tower at the second public hearing on Nextel's application, stated,

> I want to say one positive thing. This tower is so remote from all habitation that replacement with a monopole would not have any significant positive impact on the environment. So I don't think—I think that's not really an issue.

Transcript of Zoning Board of Appeals meeting (Aug. 20, 2002) at 40 (attached to O'Neil aff. Ex. J).

The facts in this matter more closely align with those in *Smart.* In that case, Nextel sought to modify an existing windmill tower to allow the installation of whip type antennae and place an equipment shelter at the base of the structure. The municipal board denied Nextel's application based in part on visual, aesthetic and safety concerns. *Smart,* 995 F.Supp. at 59. The district court found that the municipality's action constituted unreasonable discrimination and that the municipality's concerns were not justified, since Nextel provided evidence that installation of its equipment would not cause any problems relating to safety and that the aesthetic concerns of replacing the windmill blades with whip antennae were not justified, because visual evidence showed no negative aesthetic impact would result. *Id.* In addi-

tion, the district court found that concerns over the visual impact of the equipment shelter were not justified, since Nextel agreed to provide the exact same screening as that of another wireless services provider whose application to install a wireless telecommunications facility had been approved. *Id.*

The Court can discern no plausible reason why the ZBA approved the VoiceStream application and, approximately two months later, voted to deny a virtually identical application from Nextel. The ZBA offered no reason in its resolution "denying the Negative Declaration." Planning Department Staff memo to Susan K. Jaros, Town Clerk (Aug. 16, 2002) at 1 (attached to O'Neil aff. Ex. H); *cf. AT & T Wireless PCS, Inc. v. City Council of the City of Virginia Beach,* 155 F.3d 423, 427 (4th Cir.1998) (town's denial of analog and digital service providers' applications to erect two towers in residential area provided no evidence that the City Council had any intent to favor one company or form of service over another).

The Court will now turn its attention to Nextel's second contention, that the ZBA's action had the effect of prohibiting service in violation of the TCA. The TCA provides that it is a violation for a municipality to prohibit, or make decisions that have the effect of prohibiting, personal wireless services. 47 U.S.C. § 332(B)(i)(II). The Second Circuit has interpreted this section to mean that local governments may not regulate personal wireless service facilities in such a way as to prohibit remote users from reaching "facilities necessary to make and receive phone calls." *Willoth,* 176 F.3d at 643. "In other words, local governments must allow service providers to fill gaps in the ability of wireless telephone users to have access to land-lines." *Id.* However, a town may reject an application "if the service

gap can be closed by less intrusive means." *Id.* (citation omitted). As one of several examples, the Second Circuit lists the possibility of "us[ing] a preexisting structure" to limit the aesthetic impact of a cell site. *Id.*

*Willoth* involved applications by Sprint to construct three wireless communications facilities within the Town of Ontario. However, the evidence in that record established that two towers and possibly even a single tower would allow Sprint to provide in-vehicle coverage throughout the town and in-building coverage throughout most of the town. *Willoth,* 176 F.3d at 643. Thus, where holes in coverage are very limited in number or size (such as the interior of buildings in a sparely populated rural area, or confined to a limited number of houses or spots as the area covered by buildings increases) the lack of coverage likely will be *de minimis* so that denying an application to construct a tower will not amount to a prohibition of service. *Id.*

The situation here is dramatically different and, applying the law to the facts at hand, there is no doubt that Nextel has chosen the least intrusive means for filling a significant gap. Nextel submitted Radio Frequency ("RF") propagation maps with its application that clearly showed a significant gap in Nextel's service in the Town of Amherst. Such gaps are clearly substantial and are not limited to rural areas or the interior of buildings in sparsely populated areas. Nextel is seeking to fill existing coverage holes near the intersection of New Road and Tonawanda Creek Road along with providing coverage along Tonawanda Creek Road and providing at least in-vehicle coverage on Routes 263, 78 and 270. O'Neil aff. ¶ 9; Exs. D, Tab 11 and G, Tab 2. Those roads are well traveled and certainly do not qualify as rural areas. Nextel explained in detail at both public hearings the significance of the RF maps and the necessity for adding anten-

nae to the New Road tower. In addition, as Nextel explained in response to the ZBA's inquiries, that, even if it would be legally appropriate to consider the ability of a its customers to "roam" onto other wireless networks in an area of inadequate coverage, the technical requirements of Nextel's system make it impossible for Nextel customers to "roam" onto any other system. O'Neil aff. Ex. J at 13–14.

Furthermore, the Court finds that Nextel has established that there is no less intrusive means to fill the significant gap in coverage other than to collocate antennae on an existing structure. The existing tower will remain in place regardless of whether Nextel collocates its antennae on the structure or not. The only other alternative would be for Nextel to find a site where it could build a new tower to an adequate height for the sole purpose of placing only its antennae on the structure. The Town's own telecommunications regulations unequivocally state a strong preference that wireless providers collocate antennae on existing structures and, in any event, the Town's adoption of a moratorium on any new towers has foreclosed that option. The moratorium, coupled with the ZBA's denial of Nextel's collocation application, has left Nextel with no means of filling the significant coverage gap in the Town and clearly has the effect of prohibiting wireless service within the Town in violation of the TCA.

Thus, Nextel is entitled to summary judgment under both theories of its first cause of action.

### The ZBA's Denial of Nextel's Application Is Not Supported by Substantial Evidence or a Written Decision

 The TCA provides that a denial of a request to build wireless facilities must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (2002).

In determining whether a denial is supported by substantial evidence, courts must employ the traditional standard for judicial review of agency actions. *Nextel Partners of Upstate New York v. Town of Canaan,* 62 F.Supp.2d 691, 695 (N.D.N.Y. 1999). Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence: "it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The decision by the ZBA to deny Nextel's special permit application is clearly not supported by substantial evidence. Defendants' own planning staff recommended approval of the application stating that "[t]he proposed project will be in harmony with the general purposes and intent of [§ 203–9–4–4.1 of the Town of Amherst Zoning ordinance]." Planning Department Staff memo to Susan K. Jaros, Town Clerk (Aug. 16, 2002) at 1 (attached to O'Neil aff. Ex. H). The report's suggestion that the guyed tower be replaced with a monopole tower is of no import. The ZBA's denial of a Negative Declaration "based on the Planning Department's recommendation that the existing lattice tower be replaced with a new monopole tower or other non-lattice structure of equal or greater aesthetic appeal," is not supported by the record.

J. Matthew Plunkett, Esq., counsel for the Town of Amherst, in defendants' sole responding paper, deposes that the ZBA "clearly expressed concern . . . that an applicant abide by the Town's code provisions governing the style of cell tower required by the Town's ordinance." *Id.* However, Nextel's application was not to change the characteristics of the existing tower, or to erect a new tower, but only to add antennae to the existing, previously approved tower. *See Smart,* 995 F.Supp. 52, 59 ("Nextel merely sought to modify the Existing Tower. General aesthetic and visual concerns are therefore only an issue with regard to the modifications to the Existing Tower, and not with respect to the Existing Tower itself"). Presumably the Town approved the existing tower at 1210 New Road when it was first erected, and that issue appears not to have been a concern with respect to VoiceStream's application to add antennae to the existing tower, which the ZBA approved two months prior to Nextel's application. Furthermore, at both public hearings held on Nextel's applications, no evidence was brought forward to support a denial of the special permit application. Although the ZBA focused upon a supposed lack of demonstrated need for the facility in its initial (and subsequently rescinded) denial of the application, Nextel submitted on both occasions unrefuted and scientifically verified evidence of significant coverage gaps on major traffic routes in the vicinity of the proposed site. O'Neil aff. Exs. D, Tab 11 and G, Tab 2. As for any other potential concerns, as previously mentioned, at least one member of the community supported the application by agreeing that another set of antennae on this tower would have no impact whatsoever on surrounding property owners or the community in general. O'Neil aff. Ex. J, at 40.

Clearly, the ZBA's action with regard to Nextel's second application is in violation of the TCA provision that a denial of a request to build wireless facilities must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (2002). Nextel is entitled to summary judgment on its second cause of action.

**The ZBA's Decision was Arbitrary and Capricious**

Nextel's third claim relates to New York law. More specifically, Nextel

contends that the ZBA's denial of Nextel's application fails to meet applicable requirements under New York law. In that regard, it is well established in New York law that the determination of a municipal board will be set aside only on the basis of illegality, arbitrariness or an abuse of discretion. *James L. Garrett Co. v. Guldenschuh,* 49 A.D.2d 800, 373 N.Y.S.2d 238 (N.Y.App. Div. 4th Dep't 1975); *Bockis v. Kayser,* 112 A.D.2d 222, 491 N.Y.S.2d 438 (N.Y.App. Div.2d Dep't 1983). The local board charged with reviewing special use applications, while not divested of all discretion by the TCA, must nevertheless base a denial upon proof pertinent to the legislative conditions and not merely upon generalized community objections. *Twin County Recycling Corp. v. Yevoli,* 90 N.Y.2d 1000, 1002, 665 N.Y.S.2d 627, 688 N.E.2d 501 (1997); *PDH Properties, LLC v. Planning Board of the Town of Milton,* 298 A.D.2d 684, 748 N.Y.S.2d 193 (N.Y.App.Div.3d Dept.2002).

■ The Court finds, that based upon the evidentiary proof, Nextel has established that the ZBA's decision in this case is arbitrary and capricious, an abuse of discretion and not supported by substantial evidence. Defendants' own staff report clearly and concisely lays out Nextel's compliance with the legislative standards put in place by the Town for granting a special permit, including the expressed preference for collocated telecommunication facilities over new tower construction. The application submitted by Nextel and the oral testimony given at two public hearings provided further evidence that Nextel complied with the legislative standards for the grant of a special use permit. Although the ZBA was not necessarily bound by the staff report, New York law is clear that a municipal board must base its decision on evidence in the record that would be sufficient to support a denial of the application. *Asma v. Curcione,* 31 A.D.2d 883, 298 N.Y.S.2d 286 (N.Y.App.

Div. 4th Dep't 1969). There was no evidence adduced at the public hearings that provided any indication that Nextel's application would in any way be harmful to the health, safety or general welfare of the community. Further, the evidence demonstrated that the visual impact from placing another set of antennae on the tower at 1210 New Road was negligible and that surrounding property owners would not be harmed in any way by the addition of the proposed antennae. Thus, the ZBA's decision is clearly arbitrary and capricious, and not based on substantial evidence and must be annulled.

In addition, although the ZBA has admitted that its action constituted a denial of Nextel's application, its resolution to "deny the Negative Declaration" was procedurally deficient under New York law. The New York State Environmental Quality Review Act ("SEQRA") and the regulations promulgated thereunder, require an agency to make a preliminary determination of potential environmental significance before acting on any land use application. 6 N.Y.C.R.R. § 617.6 (2003). The regulations offer only two alternatives for this determination of significance: the agency adopts a "negative declaration" if it finds no potentially significant environmental impacts, and must adopt a "positive declaration" if it finds that such significant impacts exist. 6 N.Y.C.R.R. § 617.7. *Cf. Willoth,* 176 F.3d at 636 (Ontario Town Board adopted a resolution declaring a positive environmental impact). In the latter case, additional environmental impact statement procedures are required before the agency may take final action on the application. 6 N.Y.C.R.R. § 617.9 (2003).

The law does not provide for a "denial of a negative declaration." If the ZBA had intended to adopt a positive declaration, it would have been required to identify the specific environmental impacts it found to

be significant. 6 N.Y.C.R.R. § 617.7(b)(4) (2003). Here there was no indication anywhere in the record of any potentially significant environmental impacts. The ZBA's decision rests solely upon a stated desire to see the existing guyed tower replaced with a supposedly more attractive monopole. Whether that might be desirable and whether it is even feasible given that Nextel does not own or control the tower, the application before the ZBA was simply to allow Nextel to add one more set of antennae to a remotely located tower already containing the equipment of several other providers and at a height below all of the others. The Town Planning Department saw no environmental impact from this application, and the ZBA's determination is without basis under state as well as federal law. Nextel is, therefore, entitled to summary judgment on its third cause of action.

### Civil Rights Claim

Nextel's fourth claim is made pursuant to 42 U.S.C. §§ 1983 and 1988. Under this cause of action, Nextel contends that it sustained money damages as a result of the ZBA's unlawful actions and, as a result, it is entitled to a reasonable attorney's fee as well. In order to prove a claim under 42 U.S.C. § 1983, a plaintiff must show that a person, acting under color of state law, deprived him of rights secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Section 1983 may be employed to remedy violations of federal statutes. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In order to state a claim under Section 1983, Nextel must meet two requirements. First, the federal statute must create private rights enforceable under Section 1983 and second, the statute must not evidence congressional intent to foreclose a cause of action under Section 1983. *Blessing v.*

*Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

With regard to both elements, in *Omnipoint Communications v. City of White Plains*, 175 F.Supp.2d 697 (S.D.N.Y.2001), after reviewing the criteria laid out in *Blessing*, the Southern District found that Section 1983 remedies were viable under the TCA and that Congress had not specifically excluded remedies under Section 1983 for violations of the TCA. *Id.* at 706–08. Numerous other courts within the Second Circuit have found similarly. *See Sprint Spectrum v. Mills*, 65 F.Supp.2d 161, 162 (S.D.N.Y.1999); *SBA Communications, Inc. v. Zoning Comm'n of the Town of Franklin*, 164 F.Supp.2d 280, 294–95 (D.Conn.2001); *SBA Communications Inc. v. Zoning Comm'n of the Town of Brookfield*, 96 F.Supp.2d 139, 142 (D.Conn.2000); *Omnipoint Communications v. Wallingford*, 91 F.Supp.2d 497 (D.Conn.2000); *Cellco Partnership v. Farmington*, 3 F.Supp.2d 178 (D.Conn. 1998); *Smart SMR of New York, Inc. v. Zoning Comm'n of the Town of Stratford*, 995 F.Supp. 52, 60–61 (D.Conn.1998).

The Court concurs with the reasoning in the cases holding that a plaintiff has a remedy under Section 1983 for violations of the TCA. As a local zoning board, the ZBA acted under the color of state law. *See West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (finding that a person acts under the color of state law if he or she "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law'") (*quoting United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Also, by violating Section 332(c)(7) of the Act, the Court finds that the ZBA deprived Nextel of its federally guaranteed rights. Accordingly, Nextel is

entitled to summary judgment on this cause of action.

An attorney's fee is recoverable as an element of damages under a Section 1983 claim as provided for under 42 U.S.C. § 1988. The relevant statute reads in pertinent part as follows:

> Attorney's fees. In any action or proceeding to enforce a provision of ... [42 USCS §§ 1981–1983 ... ] ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

42 U.S.C. § 1988(b). There can be no dispute that Nextel is a prevailing party here. Given defendants' disregard of the TCA and New York State law, and the lack of opposition in defendants' papers, the Court, exercising its discretion, will order a reasonable attorney's fee.

[11, 12] The starting point for the determination of a reasonable fee is the calculation of the lodestar amount. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as *hours* dedicated to severable unsuccessful claims. *See id.* at 433–35, 440, 103 S.Ct. 1933. The lodestar may be adjusted based on several factors, including in particular the "results obtained." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. There is, however, a "strong presumption" that the lodestar figure represents a reasonable fee. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir.1997); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (1999).

Nextel is, therefore, directed to provide the Court with sufficient information concerning its claimed attorney's fee to enable the Court to properly adjudicate its claim for a reasonable attorney's fee in accordance with the law set forth above.

***Injunctive Relief***

 Nextel also seeks a permanent mandatory injunction. The standard for a permanent injunction is similar to the standard for a preliminary injunction: (1) irreparable harm and (2) success on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 392, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,72 (2d Cir.1979). Courts have consistently held that a mandatory injunction is an appropriate remedy for violations of the TCA. *Cellular Telephone Company v. The Town of Oyster Bay*, 166 F.3d 490, 496 (2nd Cir. 1999) (finding that the TCA does not specify a remedy for violations and that a majority of district courts have held that the appropriate remedy is injunctive relief in the form of an order to issue the relative permits); *see also Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1222 (11th Cir.2002) (injunction ordering issuance of a permit is an appropriate remedy for a violation of the TCA.); *Nat'l Tower, LLC v. Plainville Zoning Board of Appeals*, 297 F.3d 14, 21–22 (1st Cir.2002) (in the majority of cases the proper remedy for a zoning board decision that violates the TCA will be an order instructing the board to authorize construction.); *Omnipoint Communications, Inc. v. Planning & Zoning Commission of the Town of Wallingford*, 83 F.Supp.2d 306, 312 (D.Conn.2000) (finding that remand to board would not be appropriate as that would create further delay especially in light of the multiple hearings that have already spanned many months during the process).

 Nextel has, on more than one occasion, attended a public hearing on its application for a wireless communications

facility. Defendants are well aware of their responsibilities and obligations under the TCA and New York State law, yet they have willfully disregarded the law and wrongfully denied Nextel's special permit application. In this case, further review by defendants would serve no useful purpose and would greatly prejudice Nextel by further delaying its ability to provide service to the public in a non-covered area. A mandatory injunction is therefore an appropriate remedy.

## CONCLUSION

In light of the above, the Court grants Nextel's application for summary judgment on all the causes of action in its complaint. The Town of Amherst and the Zoning Board of Appeals are hereby ordered to approve Nextel's application for a special use permit. As to its § 1988 claim, Nextel is directed to submit, by March 14, 2003, an application for the attorney's fee it is seeking, supported by requisite documentation.[4] Upon receipt, the Court will issue a scheduling order to allow defendants to contest, if they have a basis, plaintiff's attorney's fee request.

IT IS SO ORDERED.

---

4. See *New York State Association for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983).