**NEXTEL PARTNERS OF UPSTATE NEW YORK, INC.** as successor-in-interest to Nextel of New York, Inc., and Nextel of New York, Inc., Plaintiffs,

v.

**TOWN OF CANAAN and the Town of Canaan Planning Board and the Town of Canaan Zoning Board of Appeals, Defendants.**

No. 99–CV–0516(LEK/RWS).

United States District Court,
N.D. New York.

Aug. 13, 1999.

Crane, Greene & Parente, John P. Stockli, Jr., Albany, NY, for plaintiffs.

Petrone & Petrone, Louis S. Petrone, Utica, NY, for defendants.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Nextel Partners of Upstate New York, Inc. and Nextel of New York, Inc. (collectively, "Nextel") commenced action against the Town of Canaan and its planning boards (collectively, the "Town") alleging that the Town denied Nextel's application for zoning variances and permits to construct a telecommunications tower in violation of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332, and 42 U.S.C. § 1983. Nextel has now moved for a declaratory judgment and injunctive relief from this Court. For the reasons explained below, Nextel's motion is denied.

### I. BACKGROUND

Nextel provides wireless telecommunications, and is attempting to build a national telecommunications network. Each telecommunications facility in Nextel's network consists of an antenna mounted on a building, tower or other structure, connected to a small, nearby equipment shelter for transmission and routing. The antenna feeds a radio signal received from wireless handsets and telephones to the shelter. Signals are low power, high frequency radio waves, requiring relatively short distances between transmission sites. When a wireless user moves into a new cell, the transmission is automatically transferred to the cell site in the new

geographic region. If no such site exists, the wireless telephone service is interrupted, creating a "coverage gap."

In 1998, Nextel moved to fill such a coverage gap in its network by constructing a telecommunication facility in the Town, leasing property in an area of the Town expressly zoned for this type of telecommunication facility. In order to construct the facility, the Town zoning code requires that Nextel obtain a Special Use Permit from the Zoning Board, as well as a height variance from the Zoning Board of Appeals since the antenna atop the facility would exceed 100 feet. On May 29, 1998, Nextel submitted the necessary applications for construction of a 180 foot tower to the Town Zoning Board. Shortly thereafter, the zoning board was designated the lead agency pursuant to the New York State Environmental Quality Review Act ("SEQRA"), N.Y.Envtl.Conserv.L. § 8–0101, et. seq., becoming responsible for assembling and considering information regarding the environmental impact of the Nextel project.

Over the course of the next nine months, numerous public hearings and meetings were held concerning Nextel's application. Nextel explained its design and concerns were expressed about the aesthetic, economic, health, and safety impact of the telecommunications tower. Nextel also presented a licensed real estate appraiser who testified that the tower would not adversely impact property values or sales and conducted a "balloon study" assessing potential visual impacts of the tower. Additionally, Nextel reviewed eleven alternate sites, but concluded that each would not fill the coverage gap in its network or result in diminished aesthetic impacts. The Town contends that these alternate sites were "strawmen" purposefully selected because they would not provide adequate coverage, thereby leaving the proposed site as the only viable one. On July 20, 1998, the Town recommended that Nextel consider an alternate site along the New York State Thruway right-of-way,

and informed Nextel that its application would be incomplete until it received further information on co-location possibilities.

At a special meeting held August 24, 1998, Nextel presented the Zoning Board of Appeals with an amended application disclosing the need to construct an additional tower in the Mercer Mountain area, and its decision to lower the height of the tower located in the Town to 150 feet. On August 28, 1998, Nextel submitted its amended application, including an amended Environmental Assessment Form explaining the reduced tower height and analyzing the impact of the shorter tower. At a meeting on September 21, 1998, Nextel submitted a Draft Environmental Impact Statement ("DEIS") and the Town requested further information, including propagation studies of towers proposed by Nextel in other municipalities.

Various requests and responsive submissions were exchanged, and Nextel requested an adjournment on review of its application from November 13, 1998 until January 18, 1999. On January 25, 1999, Nextel submitted additional drive test data and propagation studies. Nextel provided more information in preparation for a February 15 zoning board meeting. At that meeting, the board decided to refer the DEIS and additional information to its own expert, Francis D. Letteri, who concluded that Nextel's submissions were deficient in several respects. The board notified Nextel about the Letteri report and its outstanding queries following a March 5, 1999 meeting.

Primarily, the board requested that Nextel (1) analyze the Thruway alternative and (2) one additional non-Thruway alternative consistent with the criteria outlined in the expert's report. The board also required more information concerning the second tower projected to be built in the Mercer Mountain area.

## II. ANALYSIS

Nextel asserts that the Town has engaged in a strategy calculated to delay action on Nextel's application and to discourage Nextel from constructing a telecommunication facility at the proposed site. Accordingly, Nextel moves for preliminary and permanent injunctive relief based upon the Town's alleged violation of the TCA, § 1983, and SEQRA.

A motion for a preliminary injunction should not be granted unless the movant demonstrates (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) "sufficiently serious questions" on the merits and a balance of hardships "tipping decidedly" in the movant's favor. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Nextel must meet an even more rigorous standard here. A "clear" or "substantial" showing of a likelihood of success is required where the injunction sought "will alter, rather than maintain, the status quo"—that is, where the injunction is properly characterized as "mandatory" rather than "prohibitory." *See Jolly v. Coughlin,* 76 F.3d 468, 473–74 (2d Cir. 1996) (citing *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995)). The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits. *See, e.g., University of Texas v. Camenisch,* 451 U.S. 390, 392, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Applying the foregoing standard, Nextel fails to show a likelihood of success on the merits, much less actual success.

### A. Ripeness

The TCA provides that "[a]ny person adversely affected by any final action or failure to act by a state or local government . . . may . . . commence an action in any court of competent jurisdiction." *See* 47 U.S.C. § 332(c)(7)(B)(v). Because there has been no final decision with respect to Nextel's application, the Town maintains in its opposition papers that Nextel's claims are not ripe and should be dismissed. The Town also emphasizes that Nextel's application is in the information-gathering stage and therefore there has been no impermissible "failure to act" on its part.

Unless delay in the consideration of an application can be attributed to the applicant, such a position would run contrary to the express terms of § 332(c)(7)(B)(v)'s prohibition against a "failure to act." *See, e.g., Cellco Partnership v. Russell,* 1:98CV23, 1998 U.S. Dist. Lexis 11639 (W.D.N.C. June 24, 1998). As the statute itself recognizes, inaction can take not only the form of complete inactivity, but also the absence of any meaningful consideration of an application. Otherwise, a local zoning authority could indefinitely delay an application by a flurry of hearings, requests, and counter-submissions that effectively mask a denial. An inquiry into the ripeness of Nextel's action therefore is inextricably connected to its claim of unreasonable delay and violation of the TCA.

### B. The TCA and Substantial Evidence

In the words of the Conference Committee, the TCA was intended "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services . . . by opening all telecommunications markets to competition. . . ." H.R.Conf.Rep. No. 104–458, at 206 (1996). Although the TCA preserves local zoning authority over the siting of wireless facilities, the process by which zoning decisions are made is subject to judicial oversight under 47 U.S.C. § 332.

The TCA requires that denials be supported by substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B)(iii). In determining whether the denial was supported by substantial evidence, courts must employ "the traditional standard used for judicial

review of agency actions." H.R.Conf. No. 104–458, at 208 (1996). This standard of review is deferential, and courts may neither engage in their own fact-finding nor supplant the Town Board's reasonable determinations. *See Cellular Telephone Co. v. Town of Oyster Bay,* 166 F.3d 490, 494 (2d Cir.1999). Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence: "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (internal quotations omitted). The record, however, must be viewed in its entirety, including evidence opposed to the Town's view. *See American Textile Mfr. Inst., Inc. v. Donovan,* 452 U.S. 490, 523, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981).

 In evaluating the evidence, local and state zoning laws govern the weight accorded evidence. *See Cellular Telephone,* 166 F.3d at 494. The TCA establishes the procedural requirements that local boards must comply with in evaluating cell site applications, but the statute does not "affect or encroach upon the substantive standards to be applied under established principles of state and local law." *Cellular Telephone Co. v. Zoning Bd. of Adjustment,* 24 F.Supp.2d 359, 366 (D.N.J. 1998) (internal quotations omitted). In New York, cellular telephone companies are afforded the status of public utilities. *See Cellular Telephone Co. v. Rosenberg,* 82 N.Y.2d 364, 371, 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993). As such, a cellular telephone company's application for a variance must be judged by the Town's zoning boards on a different standard than that applied to the usual application for a use variance. *See Consolidated Edison Co. v. Hoffman,* 43 N.Y.2d 598, 403 N.Y.S.2d 193, 374 N.E.2d 105 (1978). A zoning board must consider whether the public utility has shown a "need for its facilities" and whether the public's need would be served

by granting the variance. *See id.* at 608–10, 403 N.Y.S.2d 193, 374 N.E.2d 105.

## C. Success on the Merits

### 1. First Cause of Action

 Section 332(c)(7)(B)(ii) provides that:

A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

47 U.S.C. § 332(c)(7)(B)(ii). Nextel contends that the Town's delay in approving its application violates this subsection.

Since no final decision has been issued by the Town, the central issue is how to view the Town's repeated requests for information. Despite the absence of any formal vote, Nextel characterizes four separate meetings as denials since it asserts that it provided all information requested only to be advised to submit further information at each subsequent date. Given the complexities inherent in the SEQRA process, a zoning authority could transform an application into a self-perpetuating, endless odyssey. That did not occur here.

Nextel mischaracterizes four zoning board meetings as "denials." At the first meeting held on September 21, 1998, Nextel submitted its DEIS for the first time and the board made various requests for further information arising from the DEIS, including how alternate sites were selected, engineer studies for those sites, drive tests for those sites, all studies/evaluations that were done by Nextel to have considered them a probable site, sequencing of all the information by date, which sites in the Town's commercial zones were considered, which sites along the Thruway were considered, what existing towers Nextel relied upon in coming to its present

proposal, and details concerning the physical anchoring and structure of the tower. *See* Draft Minutes of Meeting of the Town of Canaan Planning Board dated September 21, 1998, a copy of which was attached as Exhibit K to the Affidavit of Brenda Adams sworn to on June 6, 1998. These were legitimate grounds of inquiry.

Nextel cannot properly consider the board's failure to examine the DEIS and raise all relevant questions in a single meeting as a calculated delay strategy. Many subsequent delays resulted from similar last-minute submission of complex technical information. Furthermore, part of the 9 month process that Nextel decries includes the period from November 13, 1998 until January 18, 1999 when the review was adjourned at its own request.

Following the back-and-forth described above, *see infra* I, two principal areas of contention remain: (1) the Town's request that Nextel consider two additional alternate sites, particularly the Thruway option, and (2) whether the impact of the second tower to be constructed in the Mercer Mountain area should be included in the pending application.

### (a) Alternate Sites

Section 617.9(b)(5)(v) of SEQRA expressly requires the review of alternative sites. Nextel maintains that its submission and evaluation of eleven alternatives suffices, while the Town submits that Mr. Letteri's letter provides grounds to question the feasibility of those sites and posits the "strawman" theory described above. In order to conclude the Town correctly rejected Nextel's eleven alternate sites and was justified in requiring assessments of two additional sites, the Court must weigh the strength of the Letteri report and determine whether it rises to the level of substantial evidence in providing reasonable grounds for the Town's decision.

The Court concludes that the Letteri report provides substantial evidence supporting the Town's decision. The report requests that Nextel investigate altering voltage flow as an alternative to building the Mercer Mountain site, as well as a list of specific information requests to which Nextel had not responded. Among those requests were questions concerning the height of the receiving antenna and specific numeric values to attach to the drive tests Nextel conducted rather than the ambiguous terms it has employed to date.

With respect to the Town's request that one alternate site include a Thruway location, Nextel contends that in its business judgment the leasing terms applicable to a cellular tower located on Thruway property preclude construction. According to the Adams affidavit, however, there are currently cellular towers operating on Thruway sites; indeed, the Town requested that Nextel explore a co-location possibility with an existing provider. Nextel should address those concerns.

Nextel's claim that the Town must provide specific alternatives for it to consider is incorrect. *See* Envtl. Conserv. L. § 109(1). Indeed, the Second Circuit in *Sprint Spectrum v. Willoth*, 176 F.3d 630 (2d Cir.1999), held that under SEQRA a zoning board had the authority to consider alternative sites in determining whether a proposal minimized environmental impacts. But if, after having requested assessments of two alternative sites, the Town were to then request additional sites, then Nextel would indeed have evidence of the "cat and mouse game" that it claims is occurring. Thus far, the Town has provided substantial evidence justifying its decision to deem the DEIS incomplete.

### (b) Mercer Mountain Site

Considering the current application without an assessment of the Mercer Mountain project, the Town contends, would result in the type of segmented review prohibited by section 617.3(g) of SEQRA. Nextel has not yet selected a site for the Mercer Mountain tower, and asserts that circumstances here warrant a segmented review since consideration of the Mercer Mountain tower would provide grounds for further delay.

The determination of when to conduct a cumulative review, however, lies with the Town. The Second Circuit recently observed that "[a]n agency making a SEQRA determination is required to consider the cumulative impact of its action when applications are related ... and it may choose, in its discretion, [to examine or] not to examine the cumulative impact of separate applications within the same geographic area." *Willoth,* at 646. In *Willoth,* two other cellular providers had been licensed by the FCC for the area, and based on recent hirings it appeared likely that they would soon deploy and make applications. Based upon that probability, the court held it was permissible for the town to engage in a cumulative impact analysis. Here, we deal in certainties: Nextel has clearly stated its intention to build a second tower.

The technical capabilities of one cell necessarily effect neighboring cells, creating the potential for environmental and aesthetic tradeoffs. A cumulative review would best assess the global consequences and role of a telecommunication facility connected to a grid encompassing a wider geographic region. Accordingly, Nextel should submit the general information requested by the Town concerning the Mercer Mountain site.

The Court notes Nextel's understandable concern regarding inquiry into the second tower site. Nevertheless, it takes comfort in the Town's express assurances that it merely requires "general information" about "related aspects" of the proposed two towers. If the Town were effectively to commence a full-scale SEQRA assessment of the Mercer Mountain site, it would likely run afoul of the TCA. Every telecommunication facility impacts those to which it transmits, and from which it receives, signals. A zoning authority could therefore conceivably tie up an entire region based upon the construction of a single tower—a complete violation of the TCA.

### 2. Second Cause of Action

Nextel claims that the Town's refusal to approve its application constitutes constructive denial and violates section 332(c)(7)(B)(i)(II), which states that local authorities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." The Second Circuit has held that "the [TCA's] ban on prohibiting personal wireless services precludes denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines." *Willoth,* at 646. As shown above, the Town thus far has merely complied with SEQRA in attempting to determine whether Nextel has submitted a proposal that represents the least intrusive means of providing remote access. Compliance with the information-gathering process SEQRA requires does not constitute a prohibition, or every denial of a first time applicant would constitute a prohibition and the TCA's preservation of local zoning authority would be an utterly empty gesture.

### 3. Third Cause of Action

Section 332(c)(7)(B)(iii) mandates that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." There has been no denial issued with respect to Nextel's application, which is still in the review process. This section would apply if there had been a constructive denial disguised as SEQRA compliance, but that is not the case here. As discussed above, the Town has provided substantial evidence justifying its decision to deem Nextel's DEIS incomplete.

### 4. Fourth Cause of Action

In its final claim under the TCA, Nextel alleges that the Town "unreasonably discriminate[d] among providers of function-

ally equivalent services" in violation of section ·332(c)(7)(B)(i)(I). As a threshold matter, Nextel must show that the Town discriminated among providers of functionally equivalent services and that these providers were treated unequally. No such proof has been offered. The Town's insistence on SEQRA compliance is not unreasonable, much less discriminatory.

### 5. Fifth Cause of Action

Given the lack of injury to its rights, Nextel's § 1983 claim likewise fails.

### 6. Sixth Cause of Action

As discussed above, *see infra* II.C.1(a) – (b), the Town has in fact complied with SEQRA, and Nextel's state law claims are meritless.

## D. Irreparable Harm

Absent a showing of likelihood of success on the merits, this Court need not make a determination regarding Nextel's claim of irreparable harm.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiffs' motion for a declaratory judgment, and preliminary and permanent injunctive relief is DENIED.

IT IS SO ORDERED.