**Paulette VAUGHN and Joy Vaughn, Plaintiffs,**

v.

**CONSUMER HOME MORTGAGE, INC. et al., Defendants.**

**Dana Y. Banks and David B. Mounsey, Plaintiffs,**

v.

**Consumer Home Mortgage, Inc. et al., Defendants.**

**No. 01–CV–7937 (ILG).**

United States District Court, E.D. New York.

Nov. 18, 2003.

Hugh A. Zuber, Jacob, Medinger & Finnegan, New York City, Richard Wagner, Esq., Brooklyn Legal Services Corp. "A", Brooklyn, NY, for Plaintiffs.

George G. Coffinas, Coffinas & Coffinas, New York City, Joseph M. Pastore, III, Brown Raysman Millstein Felder and Steiner, LLP, Hartfford, CT, Pamela E. Woodside, Brown Raysman Millstein Felder and Steiner, LLP, New York City, Robert Mauer, Garden City, NY, Maura Bleichert Lee, Peterson & Ross, Maura Bleichert Lee, Boundas, Skarzynski, Walsh & Black, LLC, New York City, Nicholas P. Chrysanthem, McManus, Collura & Richter, P.C., New York City, Carolyn Lisa Miller, United States Attorney's Office, Eastern District of New York, Philip J. Miller, United States Attorney's Office Civil Division, Eastern District of New York, Brooklyn, NY, for Defendants.

Ann McGrane, North Hills, NY, Pro se.

*MEMORANDUM & ORDER*

GLASSER, District Judge.

This action is based upon the purchase and financing of residential real property by Plaintiffs in two related cases. Plaintiffs contend that numerous parties, including the seller/broker, the mortgage lender, several of their officers and employees, and several attorneys, engaged in a predatory lending scheme that induced the Plaintiffs to purchase these residences at inflated prices. Plaintiffs have also sued the Secretary of the United States Department of Housing and Urban Development ("HUD") for abuse of discretion and failure to discharge duties under certain provisions of the National Housing Act, 12 U.S.C. §§ 1708, 1709, by failing and refusing to: (a) exercise due diligence in the issuance of federally-insured mortgages; and (b) warn prospective purchasers/borrowers of a known and substantial risk to them of the dangers of falling prey to predatory selling and lending schemes. Plaintiffs seek a declaratory judgment that the failure by HUD to exercise due diligence in the issuance of Fair Housing Administration ("FHA") mortgage insurance constitutes an abuse of discretion. Plaintiffs also seek a mandatory injunction under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, to compel the HUD Secretary to issue such orders and directions as are necessary to compel those subordinates charged with administering the FHA mortgage insurance program to exercise reasonable care and due diligence that will prevent or substantially reduce the risk of issuing mortgage insurance policies for home sales financed at fraudulently inflated amounts.

Defendant Mel Martinez, Secretary of HUD, now moves this Court to dismiss Plaintiffs' complaints for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

## FACTUAL BACKGROUND

Plaintiffs Paulette Vaughn and Joy Vaughn ("Vaughn Plaintiffs") are the joint purchasers of residential real property located at 247 Cooper Street in Brooklyn, New York. Dana Y. Banks and David. B. Mounsey ("Banks Plaintiffs") are the joint purchasers of residential real property located at 415 Pennsylvania Avenue in Brooklyn, New York. The Vaughn Plaintiffs and Banks Plaintiffs (collectively, "Plaintiffs") purchased their respective properties through Defendant Foreclosure Network of New York, Inc. ("FNNY"), a real estate brokerage firm. Plaintiffs allege that FNNY employees regularly made false representations with the intent to deceive them into believing that the properties were worth more than their actual value, that Plaintiffs would be able to earn rental income, and that FNNY would renovate and repair the properties before the transfer of title. Plaintiffs claim that FNNY failed to tell them at the outset the purchase price of the properties, and instead fixed the price based on an analysis of the maximum amount Plaintiffs could afford to pay.

FNNY steered Plaintiffs toward allegedly complicit attorneys who advised them to sign sale contracts without giving any meaningful counsel. According to Plaintiffs, FNNY also steered them toward Consumer Home Mortgage ("CHM"), a lender that it consistently used to further the predatory lending schemes, without informing Plaintiffs that they could choose another lender. CHM, in turn, submitted applications for mortgage insurance to HUD on Plaintiff's behalf.

Pursuant to 12 U.S.C. § 1709, through the Federal Housing Administration ("FHA"), the Secretary of HUD is author-

ized to insure mortgages and administer rehabilitation loans to home-buyers who wish to purchase houses in need of repair or modernization but who cannot afford the interim financing necessary to do either. CHM submitted Plaintiffs' mortgage insurance applications to HUD with the knowledge that Plaintiffs could not afford the monthly mortgage payments. These applications included fraudulent appraisal reports designed so that HUD would approve the loans based upon the inflated sales prices.

Plaintiffs allege that Defendants recovered a substantial amount of money by selling sub-standard properties at prices well above their actual value. Known as flip-selling, perpetrators of this type of scheme intentionally target low- to moderate-income racial minorities who are first-time home buyers. Plaintiffs allege that flip-selling and predatory lending occur regularly in the area in which Plaintiffs bought properties, making it what is known as a "hot zone."

Plaintiffs contend that HUD should have provided appropriate warnings to buyers because it had actual knowledge that the targeted area was a hot zone and that the victims were low- to moderate-income racial minorities who were first-time home buyers. The Plaintiffs further allege that the process HUD uses to evaluate applications for mortgage insurance omits to exercise any precaution or diligence even though FHA insurance is an essential part of the flip-selling scheme. Finally, although HUD requires that all applications for FHA-mortgaged properties contain a rider requiring the seller to provide the purchaser with a statement by FHA setting forth the appraised value, HUD failed to ensure that this statement was included in this and most other instances. Plain-

tiffs assert that HUD knows of measures that would prevent or deter Defendants and those like them from successfully engaging in flip-selling and predatory lending, but has failed or refused to adopt them.

By Memorandum and Order dated March 27, 2003, this Court denied motions to dismiss made by most of the other Defendants.[1] Pursuant to Fed.R.Civ.P. 68, several Defendants offered and Plaintiffs accepted an offer of judgment in the amount of $500,000. Judgment has been fully paid by the settling Defendants.

## DISCUSSION

### *Subject matter jurisdiction*

In a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1), the Court must assess the legal sufficiency of the complaint. *See LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). All well-pleaded material facts will be accepted as true and all reasonable inferences will be drawn in the light most favorable to Plaintiffs. *Id.; Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Only if it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim will a motion to dismiss be granted. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir.1994) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

HUD asserts that this Court does not have subject matter jurisdiction over the declaratory judgment claim because the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, does not create subject matter jurisdiction. Nevertheless, Plaintiffs maintain that there is federal question jurisdiction pursuant to 28 U.S.C. § 1331,

---

**1.** Although most of the other Defendants moved to dismiss at an earlier date, the brief-ing on HUD's motion was stayed voluntarily by Plaintiffs and HUD.

over the declaratory and injunctive claims. Specifically, they maintain, the federal question arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, which allows "[a] person suffering legal wrong because of agency action" to seek "judicial review thereof." § 702. Courts have held that "[j]urisdiction over APA challenges to federal agency action is vested in district courts unless a preclusion of review statute . . . specifically bars judicial review in the district court." *Robbins v. Reagan*, 780 F.2d 37, 42 (D.C.Cir.1985) (distinguishing *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), which held that APA review was specifically precluded by the Social Security Act). Nothing in the National Housing Act or Fair Housing Act specifically precludes judicial review of actions by HUD, therefore, subject matter jurisdiction is properly vested in this Court.[2]

### *Failure to state a claim upon which relief can be granted*

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take all allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiffs. *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir.1989). The Court's consideration of a motion to dismiss pursuant to 12(b)(6) is limited to the factual allegations in the complaint, documents incorporated by reference into the complaint, matters of which judicial notice may be taken, and

documents either in Plaintiffs' possession or of which Plaintiffs had knowledge and relied on in bringing suit. *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *see also Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

To obtain judicial review under the APA, Plaintiffs must show that HUD's actions do not fall into either of the two exceptions found in 5 U.S.C. § 701(a) viz: (1) the underlying statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. *See Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). It is clear that the first exception does not apply because neither the National Housing Act nor the Fair Housing Act precludes judicial review. Nevertheless, HUD asserts that the second exception applies because the management of its mortgage insurance program is committed to agency discretion by law. In *Heckler*, the Court found that although there is a presumption that judicial review is available under the APA, "an agency's decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion" and then "the presumption is that

---

**2.** HUD cites *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for the proposition that a private right of action cannot be implied from the National Housing Act or the Fair Housing Act unless expressly granted. While *Cort* did hold that private rights of action cannot be implied from federal statutes, Plaintiffs here are not attempting to enforce a private right of action: "[t]he 'private right of action' issue is whether Congress meant to give an injured person a right himself to enforce the federal statute directly against the *nonfederal person,*" not whether the injured person can challenge the actions of the agency itself. *N.A.A.C.P. v. Sec'y of Hous. and Urban Dev.*, 817 F.2d 149, 152 (1st Cir.1987) (emphasis added). Here, Plaintiffs have sued HUD, a federal defendant; their claim does not arise out of an implied right of action in the National Housing Act or Fair Housing Act, but out of the APA.

judicial review is not available." *Id.* at 831, 105 S.Ct. 1649. In order to rebut the presumption that judicial review is not available, the underlying statute must be drawn so as to have a "meaningful standard against which to judge the agency's exercise of discretion," or, more succinctly, there must be "law to apply." *Id.* at 830, 834, 105 S.Ct. 1649.

HUD argues that the "law to apply" in this case is the Fair Housing Act, 42 U.S.C. §§ 3601–3608. Specifically, the aim of that Act is to "provide, within constitutional limitations, for fair housing throughout the United States." § 3601. The Act prohibits all practices that deny housing to persons on the basis of race, color, religion, sex, familial status, or national origin and applies to both intentional housing discrimination and all policies or practices which have a discriminatory effect, even absent intent. *Suffolk Hous. Serv. v. Town of Islip*, 1996 WL 75282, at *9 (E.D.N.Y. Feb. 8, 1996) (Glasser, J.). The Act directs the Secretary of HUD to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies" of fair housing. § 3608(e)(5).

In *N.A.A.C.P.*, 817 F.2d at 149, the First Circuit held that federal courts have the legal authority to review claims that the Secretary of HUD failed to administer HUD programs in a manner to further the policies of fair housing. The plaintiff in that case sued HUD for failing "to enforce constitutional and statutory proscriptions against discrimination in Federally-assisted programs," specifically the administration of Community Development Block Grants and Urban Development Action Grants. *Id.* at 151. The court held that there were adequate standards by which to judge the lawfulness of HUD's *pattern* of conduct:

The standard for reviewing that pattern can be drawn directly from the statutory instruction to "administer" its programs "in a manner affirmatively to further the policies" of "fair housing." 42 U.S.C. §§ 3608(e)(5), 3601. This standard, like many, may be difficult to apply to borderline instances, yet a court should be able to determine a clear failure to live up to the instruction over time. It should be able to determine whether the agency's practice, over time, in respect to this mandate has been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A). Doing so, in the context of a claim of serious failure over time to try to further Title VIII's goals, need not involve the court in "superintend[ing] economic and managerial decisions," *Hahn v. Gottlieb*, 430 F.2d at 1249, or in reweighing matters that Congress has asked HUD to balance. Rather, this case seems to call for a more straightforward evaluation of whether agency activity over time has furthered the statutory goal, and, if not, for an explanation of why not and a determination of whether a given explanation, in light of the statute, is satisfactory.

*Id.* at 158.

This Court found *N.A.A.C.P.*'s analysis "entirely persuasive" in *Suffolk Hous. Serv. v. Town of Islip*, 1987 WL 14131, at *3 (E.D.N.Y. July 14, 1987) (Glasser, J.), where a class of plaintiffs sued HUD, among others, because local housing agencies had blocked efforts to build subsidized housing for lower income families in the plaintiffs' town. The Court held that the "Fair Housing Act, especially in the broad mandate of section 3608(e)(5), avoids Chaney's presumption of nonreviewability." *Id.* at *4. The Court also stated that:

The mere fact that a statute grants broad discretion to an agency does not

render the agency's decisions completely nonreviewable, under the "committed to agency discretion by law" exception unless the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised.

*Id.* at *3 (quoting *Robbins,* 780 F.2d at 45).

HUD cites *Am. Disabled for Attendant Programs Today (ADAPT) v. United States Dep't of Hous. and Urban Dev.,* 170 F.3d 381 (3d Cir.1999), to hold that the FHA does not provide a substantive standard by which to judge agency action where a plaintiff is challenging *general agency actions,* as opposed to an instance of non-enforcement. In *ADAPT,* organizations representing individuals with disabilities sued HUD for failure to carry out investigative and enforcement duties under the FHA amendments relating to accessible housing for people with disabilities. *ADAPT* is distinguishable, however, because plaintiffs there pointed not to specific instances of agency action (or inaction), but to a general abdication of investigative and enforcement duties. Here, Plaintiffs can demonstrate that in at least two specific instances HUD failed to investigate mortgage insurance applications that turned out to be fraudulently prepared, resulting in injury to Plaintiffs. Although Plaintiffs do seek broad-based relief, there are specific instances through which HUD's actions may be evaluated, making Plaintiffs here more like the plaintiff in *N.A.A.C.P.*

Plaintiffs here challenge HUD's pattern of neglecting to evaluate mortgage insurance applications with due diligence. This Court may determine whether HUD's failure to investigate mortgage insurance applications from low- to moderate-income minority applicants in hot zones constitutes an abdication of the Secretary's duty to administer HUD programs in a manner

to further the policy of the FHA, specifically, to provide fair housing throughout the United States. In addition to the Fair Housing Act, several cases interpreting the Act also provide the Court with law to apply. *See, e.g., N.A.A.C.P. v. Kemp,* 721 F.Supp. 361 (D.Mass.1989) (on remand from the first circuit, fashioning declaratory and injunctive relief for HUD's failure to administer housing programs to further policies of Fair Housing Act); *cf. Suffolk,* 1996 WL 75282 at *15 (holding that HUD did not act arbitrarily or capriciously under the FHA in responding or failing to respond to violations by local housing providers).

Section 704 of the APA states that judicial review of agency action is available only if there has been final agency action for which there is no other adequate remedy in a court. *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230, n. 4, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) (holding that wildlife conservation groups had standing to bring an action for declaratory and injunctive relief against cabinet members for their actions under the Pelly and Packwood Amendments). The APA "embodies the basic presumption of judicial review to one suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Abbott Lab. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (internal citations omitted).

█ As interpreted by courts, the APA's "final agency action" requirement for judicial review is quite broad. According to the Supreme Court, the legislative history of the APA judicial review provision "manifests a congressional intention that it cover a broad spectrum of administrative actions, and . . . the [APA's] generous review provisions must be given a hospitable interpretation." *Abbott Lab.,* 387

U.S. at 140–41, 87 S.Ct. 1507 (internal citations omitted). Furthermore, as defined by the APA, agency action includes agency *inaction*, 5 U.S.C. § 551(13), so that "courts [can] compel an official to exercise his discretion when he fails or refuses to do so." *Suffolk*, 1987 WL 14131 at *3, (holding that HUD's actions were reviewable under the APA in a case where defendants had blocked efforts to build subsidized housing in plaintiffs' town).

HUD does not dispute that a final agency action within the meaning of the APA has occurred in this case. . Nevertheless, HUD asserts that Plaintiffs have other adequate remedies at law and, therefore, judicial review is not available. Specifically, HUD points to the private actions Plaintiffs have brought against FNNY, CHM, et al., which have, so far, resulted in a $500,000 judgment for Plaintiffs. *See ADAPT*, 170 F.3d at 390 (holding that an adequate judicial remedy existed where plaintiffs could pursue claims of housing discrimination against federal-funding recipients, rather than seek judicial review of HUD's decision not to conduct an investigation); *Washington Legal Found. v. Alexander*, 984 F.2d 483 (D.C.Cir.1993) (holding that option to sue educational institutions administering scholarships was an adequate alternative to suing the Department of Education to prohibit funds from being provided to educational institutions that offer some scholarships only to minority students).

The remedies that Plaintiffs seek against HUD include a declaratory judgment that the failure by HUD to exercise due diligence in the issuance of FHA mortgage insurance constitutes an abuse of discretion and a permanent mandatory injunction compelling HUD to exercise such reasonable care and due diligence as will prevent predatory lending schemes in the future. HUD claims that Plaintiffs can

bring and have brought actions for money damages against the private entities involved in the predatory lending scheme. That is to say, in essence, that persons similarly situated to Plaintiffs can continue to be victimized by predatory lenders and their co-conspirators, so long as they can continue to pursue them in court. This also assumes that such victims will always have the means or the will to pursue them. It is not unreasonable to conclude that such relief is more theoretical than real and not adequate at all as an alternative for the declaratory and/or injunctive relief sought here.

Finally, Plaintiffs must demonstrate that they are entitled to the relief they seek. The APA provides for "any applicable form of legal action, including actions for declaratory judgments or ... mandatory injunction." 5 U.S.C. § 703; *Hurley v. Reed*, 288 F.2d 844, 846 (D.C.Cir.1961) ("[t]he legislative history of the [APA] shows that review of administrative adjudications by an action for declaratory judgment was deliberately provided to protect any person suffering legal wrong from rulings of administrative agencies").

HUD challenges the declaratory judgment on the merits, citing *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), as holding that HUD has no duty to perform due diligence. *Neustadt* involved a claim for money damages against HUD under the Federal Tort Claims Act ("FTCA"). The Court held that because the plaintiffs' claim arose out of misrepresentation, it was not actionable under the FTCA and that in enacting the FTCA, Congress had not imposed a duty of due diligence on HUD. *Neustadt* is inapposite here because Plaintiffs' claim arises out of the APA, not the FTCA.

HUD also maintains that Plaintiffs are unable to meet the injunction standard as a matter of law. An injunc-

**214**

tion may be granted if the movant can show: (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions on the merits and a balance of hardships tipping decidedly in the movant's favor. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). The showing is even greater when a mandatory permanent injunction is sought:

> A clear or substantial showing of a likelihood of success is required where the injunction sought will alter, rather than maintain, the status quo—that is, where the injunction is properly characterized as mandatory rather than prohibitory. The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits. *See, e.g., University of Texas v. Camenisch,* 451 U.S. 390, 392, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

*Nextel Partners of Upstate New York, Inc. v. Town of Canaan,* 62 F.Supp.2d 691, 694 (N.D.N.Y.1999) (internal citations omitted).

■ Taking all of Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, *Ortiz,* 867 F.2d at 149, Plaintiffs cannot meet the standard for a mandatory permanent injunction. Plaintiffs assert that the irreparable harm is the increased likelihood that they will be victimized by predatory lending schemes in the future as they attempt to purchase homes. It is highly unlikely given Plaintiffs' recent experience with predatory lending that they will again becomes victims of this scheme. At most, the harm is speculative and, as such, Plaintiffs cannot satisfy the *Jackson Dairy* requirements. Furthermore, the potential injury alleged by Plaintiffs "must be the kind of injury for which an award of money cannot compensate." *Sperry Int'l Trade, Inc. v. Gov't of Israel,* 670 F.2d 8, 12 (2d Cir.1982)

(holding that plaintiff failed to show irreparable harm where the harm alleged was strictly financial). As their settlement with a group of Defendants demonstrates, Plaintiffs have been compensated with money for the injuries they sustained by Defendants' predatory lending scheme. Plaintiffs' action for a permanent injunction is, therefore, dismissed.

## CONCLUSION

For all of the above reasons, HUD's motion to dismiss Plaintiffs' action for declaratory judgment is denied. HUD's motion to dismiss Plaintiffs' action for permanent injunction is granted.

SO ORDERED.