Shereen BOBROWSKY and Lillian Bobrowsky, the Plaintiffs

v.

George CURRAN, Howard Neufeld, Jeffrey Olson, City of Yonkers, City of Yonkers Department of Buildings, the Defendants

No. 01 CIV. 4425(SCR).

United States District Court, S.D. New York.

Aug. 24, 2004.

**160**

Leonard Buddington, Jr., Yonkers, NY, for Plaintiffs.

Kenneth J. Glassman, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. *INTRODUCTION:*

Shereen Bobrowsky and Lillian Bobrowsky (collectively, the "Plaintiffs") initiated this action on or about May 23, 2001 by filing a complaint, which complaint was superceded by an amended complaint filed on or about June 19, 2001 (the "Amended Complaint"). The Plaintiffs' lawsuit involves a private land dispute between the Plaintiffs and George Curran ("Mr.Curran")[1], Jeffrey Olson ("Mr.Olson")[2] and Howard Neufeld ("Mr. Neufeld"; collectively, Mr. Curran, Mr. Olson and Mr. Neufeld are referred to herein as the "Individual Defendants"). The Plaintiffs allege that in 1995 the Individual Defendants constructed an electronically operated gate, which blocked a right-of-way giving the Plaintiffs' access to their property. At the time the lawsuit was commenced, the Plaintiffs owned two properties in the immediate area, 71 Berkeley Avenue and 88 Fanshaw Avenue, both in Yonkers, New York. The current dispute involves the property at 71 Berkeley Avenue (the "Berkeley Property"). The Plaintiffs' lawsuit also includes claims against the City of Yonkers and the City of Yonkers Department of Buildings[3] (collectively referred to herein as "City of Yonkers"), which issued a building permit

1. Mr. Curran resides at 16 Fanshaw Avenue, Yonkers, New York.

2. Mr. Olson previously resided at 12 Fanshaw Avenue, Yonkers, New York. In 1996, he sold that residence to Mr. Neufeld. At the commencement of the lawsuit, the Plaintiffs also sued Mr. Olson's professional singing group, "The Village People" and its corporate entity "SIXUVUS, Ltd." By stipulation of the parties, the lawsuit was later withdrawn against "The Village People" and "SIXUVUS, Ltd." on or about July 25, 2001.

3. The City of Yonkers Department of Buildings is not a legal entity subject to a lawsuit; the City of Yonkers is the proper party to the action.

to Mr. Olson after the gate's construction. The Plaintiffs' claims against the City of Yonkers are based upon its refusal to rescind the building permit and order the Individual Defendants to remove the gate. Subsequent to the filing of the lawsuit, the Plaintiffs sold the Berkeley Property, which was the subject of the dispute.

The Plaintiffs' Amended Complaint contains three causes of action. The First Cause of Action alleges that the Defendants "purposefully, maliciously and without any legal or permissible claim of right violated the Plaintiffs' property rights and continues [sic] to do so without proper legal authority, as a result of which the Plaintiffs' [sic] suffered damages." (Amended Complaint, ¶ 25). The Second Cause of Action alleges that the Defendants "purposefully, maliciously and without any legal or permissible claim of right created and maintained a nuisance on property owned by the Plaintiffs and said nuisance has caused and resulted in damages for the Plaintiffs." (Amended Complaint, ¶ 27). Finally, the Third Cause of Action alleges that the "City of Yonkers, in issuing a permit for the iron gate to be erected which denied the Plaintiffs' access to their own property, violated the Americans with Disabilities Act of 1991 (the "ADA"), and thus caused the Plaintiffs to suffer damages." (Amended Complaint, ¶ 30).

This case was originally assigned to the Honorable Barrington D. Parker, Jr.[4] and was subsequently reassigned to the Honorable Laura T. Swain on or about November 1, 2001. On or about October 7, 2003, the case was transferred once again, this time to this Court. At the time of such transfer, the following motions were pending in this matter: (1) the Plaintiffs' motion for a permanent injunction (the "Plaintiffs' Motion"); (2) the Defendants' motions to dismiss (collectively the "Defendants' Motions")[5]; and (3) Mr. Olson's and Mr. Curran's motions for sanctions against the Plaintiffs and their counsel, Leonard Buddington, Esq. (collectively the "Motions for Sanctions").

A conference was held before this Court on or about February 4, 2004. At that conference Mr. Buddington expressed his desire to withdraw as the Plaintiffs' counsel. He subsequently made a motion to withdraw, which was granted by this Court. Subsequent to Mr. Buddington's withdrawal as the Plaintiffs' counsel, the Plaintiffs have been represented by Shereen Bobrowsky ("Ms.Bobrowsky"), *pro se* for both of the Plaintiffs. After Mr. Buddington's withdrawal, this Court allowed Ms. Bobrowsky a period of time to submit a reply to several letter briefs received from the Defendants regarding the issue of mootness. On or about May 3, 2004, the Plaintiffs filed two new motions: (a) a "Motion and Affirmation for Mr. Neufeld to be held in default" (the "Neufeld Default"); and (b) a "Motion and Affirmation 1. To enter default judgment, and 2. To strike/preclude Mr. Glassman/Olson for violations of Federal Civil Rules" (the "Olson Default"; collectively the Neufeld Default and the Olson Default are referred to herein as the "Default Motions"). The May 3rd submissions by the Plaintiffs

---

4. Judge Parker was elevated to the Second Circuit Court of Appeals on or about October 16, 2001.

5. The Defendants' have filed the following motions to dismiss: (1) Mr. Curran filed a motion to dismiss on or about July 27, 2001; (2) the City of Yonkers filed a motion to dismiss on or about August 10, 2001; (3) Mr. Olson filed a motion to dismiss on or about August 16, 2001; and (4) Mr. Neufeld filed a motion to dismiss on or about August 22, 2001. Subsequently, the Plaintiffs filed oppositions to said motions to dismiss and the Defendants, in some cases, filed replies.

were not responsive to the limited issue the Court afforded the Plaintiff an opportunity to address and raise many additional issues beyond the scope of the allegations made in the Amended Complaint. Additionally, on or about July 20, 2004, this Court received an additional submission from the Plaintiffs entitled "Case is not moot—ADA case of retaliation and discrimination." The July 20th submission does respond to the mootness arguments raised by the Defendants; however, it also alleges additional causes of action against the Defendants, which go well beyond the causes of action set forth in the Amended Complaint. This Court will only address the Plaintiffs' legal arguments in response to the Defendants' submissions on mootness—the Plaintiffs may not advance additional causes of action in their legal memoranda at this stage of the litigation.

## II. *ANALYSIS:*

As set forth above, there are currently four categories of motions pending before this Court: (1) the Plaintiffs' Motion for permanent injunction; (2) the Defendants' Motions to dismiss; (3) the Motions for Sanctions; and (4) the Default Motions.

### A. PERMANENT INJUNCTION:

 The Plaintiffs' Motion consists of an application for a permanent injunction, which would require the removal of a certain electronic, wrought iron gate. A preliminary injunction may only be granted if the moving party can establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly

in the movant's favor." *Random House, Inc. v. Rosetta Books LLC,* 283 F.3d 490, 491 (2d Cir.2002) (per curiam). In order for an injunction to be "permanent" an even greater showing is necessary. *Vaughn v. Consumer Home Mortg.,* 293 F.Supp.2d 206, 214 (E.D.N.Y.2003). Specifically, the Supreme Court has stated that the "standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show ***actual success on the merits.***" *Nextel Partners of Upstate New York, Inc. v. Town of Canaan,* 62 F.Supp.2d 691, 694 (N.D.N.Y. 1999) (emphasis added and internal citations omitted) (citing *University of Texas v. Camenisch,* 451 U.S. 390, 392, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)); see also *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Sierra Club v. Hennessy,* 695 F.2d 643, 647 (2d Cir.1982).

 In the case at bar, even if this Court takes all of the Plaintiffs' allegations as true, and draws all reasonable inference in their favor, the Plaintiffs cannot meet the standard for a mandatory permanent injunction because they have not shown "actual success on the merits." Further, the Defendants have asserted, and both the Plaintiffs' former counsel and the Plaintiffs have conceded that the Plaintiffs sold the property that was affected by the gate. Therefore, the Plaintiffs' Motion for a permanent injunction is denied.

### B. MOTIONS TO DISMISS:

#### 1. *Standard of Review:* [6]

Under Fed.R.Civ.P. 12(b)(6), a court may dismiss a complaint only if it is clear

---

**6.** As set forth above, each of the Defendants have filed motions to dismiss the Plaintiffs' lawsuit. In bringing their respective motions,

the Defendants have relied on the Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6). For the purposes of

that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). When reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept "as true the facts alleged in the Complaint." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994). The task of the court addressing the 12(b)(6) motion is not to determine the weight of the evidence, but only to assess the legal feasibility of the complaint. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000).

2. *Third Cause of Action—ADA Claim:*

█ As set forth above, the Amended Complaint consists of three causes of action. This Court's analysis will begin with the third cause of action, which seeks recovery pursuant to the ADA. The Plaintiff's third cause of action alleges that the "City of Yonkers, in issuing a permit for the iron gate to be erected which denied the Plaintiffs' access to their own property, violated the Americans with Disabilities Act of 1991, and thus caused the Plaintiffs to suffer damages." (Amended Complaint, ¶ 30). The Amended Complaint does not specify which provision(s) of the ADA it is based upon; however, given the nature of the Plaintiffs' accusations, this Court will assume the Plaintiffs are demanding the removal of a structural barrier as mandated by 42 U.S.C. § 12182.

42 U.S.C. § 12182 only applies to "places of public accommodation", which are defined in 42 U.S.C. § 12181(7) as facilities owned by private entities affecting commerce, which are considered public accommodations for purposes of the ADA, including:

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (F) a laundromat, drycleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

There is no question that the property at issue in the case at bar (a) is privately owned, (b) does not affect commerce, and (c) does not fall into any of the categories set forth in § 12182. Whether the property is owned by the Plaintiffs or the Individual Defendants, it is certainly not a

this Order, this Court need only evaluate the claims pursuant to 12(b)(6).

"place of public accommodation." Thus, the property is not subject to 42 U.S.C. § 12182 and there is no ADA violation. Therefore, the Plaintiffs' third cause of action is dismissed with prejudice.

3. *First and Second Causes of Action:*

▆ Having found that the Plaintiffs' third cause of action under the ADA should be dismissed, this Court must determine whether it has subject matter jurisdiction to hear the Plaintiffs' remaining claims. The second cause of action alleges that the Defendants "purposefully, maliciously and without any legal or permissible claim of right created and maintained a nuisance on property owned by the Plaintiffs and said nuisance has caused and resulted in damages for the Plaintiffs." (Amended Complaint, ¶ 27). This Court has no jurisdiction over a nuisance claim, which is purely a state law cause of action.[7] Accordingly, unless there is federal jurisdiction under the Plaintiffs' first cause of action, the case must be dismissed for lack of subject matter jurisdiction.

▆ The First Cause of Action alleges that the Defendants "purposefully, maliciously and without any legal or permissible claim of right violated the Plaintiffs' property rights and continues [sic] to do so without proper legal authority, as a result of which the Plaintiffs' [sic] suffered damages." (Amended Complaint, ¶ 25). Although the Amended Complaint does not set forth a basis for federal jurisdiction, this Court will assume the claim is brought under 42 U.S.C. § 1983.[8] It is well established that the statute of limitations for § 1983 claims against a New York munici-

pality is three years. *See e.g. Wynder v. McMahon,* 360 F.3d 73, 76 (2d Cir.2004); *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994), cert. denied, 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995) (citing *Okure v. Owens,* 816 F.2d 45, 49 (2d Cir. 1987)). A plaintiff's cause of action under § 1983 accrues at the moment that plaintiff "knows or has reason to know of the injury which is the basis of her action." *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

▆ In the current case, the only relevant "state action," which could trigger § 1983 liability, was the issuance of the permit and certificate of completion for the gate by the City of Yonkers. The Plaintiffs do not dispute that the City of Yonkers Department of Buildings issued a permit for the gate on or about June 12, 1995 and a certificate of completion on or about July 6, 1995. (Amended Complaint, ¶ 16). Nor do the Plaintiffs dispute that they were aware of the action by the City of Yonkers and immediately challenged the same. (*Id.* at ¶ 17–18). However, the Plaintiffs did not bring this action until May 23, 2001, nearly six years after the municipality's action and well in excess of the applicable three-year limitations period. Thus, the Plaintiffs' first cause of action violates the statute of limitations and is dismissed with prejudice.

Based upon the determination that the Plaintiffs cannot sustain either an ADA claim or a § 1983 action against the Defendants, and the fact that the first and third

---

7. There is no claim of diversity of citizenship in this matter because both of the Plaintiffs and all of the Defendants, with the exception of Mr. Olson, are domiciled in New York State. Therefore, complete diversity is lacking and this Court lacks subject matter jurisdiction on that basis.

8. The Plaintiffs' July 20, 2004 submission confirms that § 1983 is the intended basis for the first cause of action.

causes of action are dismissed with prejudice, there is no federal jurisdiction with respect to the Plaintiffs' second cause of action—nuisance. Thus, the Plaintiffs' second cause of action is dismissed without prejudice.[9]

Accordingly, the Plaintiffs' first and third causes of action are dismissed with prejudice, the second cause of action is dismissed without prejudice, and the Clerk of the Court is directed to close this matter.

## C. MOTIONS FOR SANCTIONS:

■ As set forth above, Mr. Olson and Mr. Curran have made the Motions for Sanctions against the Plaintiffs and their former counsel, Mr. Buddington, pursuant to Federal Rule of Civil Procedure 11. The Motions for Sanctions assert that the Plaintiffs cannot prove their claims, which have no basis in law or fact. Further, the Motions for Sanctions contend that the facts, as alleged in the complaint, are insufficient to make out a prima facie case against the Defendants.

Federal Rule of Civil Procedure 11(c) provides that if parties to a litigation violate Rule 11(b), the aggrieved party may make a motion to the Court for sanctions. Rule 11(b) provides, with respect to any pleading or motion that, (1) it should not be "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" (2) "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" (3) "the allegations and other factual contentions have evidentiary support or . . . are likely to have evidentiary

support after a reasonable opportunity for further investigation or discovery;" and (4) "the denials of factual contentions are warranted on the evidence or . . . are reasonably based on a lack of information or belief." Fed.R.Civ.P. 11(b). The Second Circuit has cautioned that not all unsuccessful arguments are frivolous or warrant sanctions pursuant to Rule 11. *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830 (2d Cir.1992) (citing *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990)).

The fact that this Court has found that all three causes of action in the Plaintiffs' Amended Complaint should be dismissed does not necessary mean that the Plaintiffs' action was frivolous. In this case, this Court recognizes that. this lawsuit brought economic hardship, inconvenience and annoyance to the Defendants. However, this Court does not find that the Plaintiffs, or their counsel Mr. Buddington, have violated Fed.R.Civ.P. 11(b)(1), (2) or (3), the applicable sections of that Rule. First, this Court does not conclude that that the Plaintiffs' litigation was brought "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *See* Fed.R.Civ.P. 11(b)(1); *see also W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir.1994). Nor does this Court find that the Plaintiffs' claim was not warranted by existing law or that it was based on a frivolous argument. *See* Fed.R.Civ.P. 11(b)(2). Third, and finally, the factual allegations and contentions in the Amended Complaint were not completely without support, even though this Court has found that the dismissal of the Amended Complaint is appropriate. *See* Fed.R.Civ.P. 11(b)(3). Accordingly,

---

**9.** This Court takes no position on whether the Plaintiffs may renew the second cause of action, their nuisance claim, in state court; however, there is no federal jurisdiction and the nuisance claim may not be renewed in federal court.

this Court denies the Motions for Sanctions.

### D. DEFAULT JUDGMENTS:

On or about May 3, 2004, the Plaintiffs filed two additional motions, the Neufeld Default and Olson Default (the Default Motions), seeking to have default judgments entered against Mr. Neufeld and Mr. Olson, respectively. This Court has reviewed the Default Motions and does not find that the entry of a default against either Mr. Olson or Mr. Neufeld is necessary or appropriate. Accordingly, the Neufeld Default and the Olson Default are denied.

### III. *CONCLUSION:*

As set forth more fully above:

A. The Plaintiffs' Motion for a Permanent Injunction is denied.

B. The Defendants' Motions to Dismiss are granted, the Plaintiffs' Complaint is dismissed in its entirety and the Clerk of the Court is directed to close this matter. The Plaintiffs' first and third causes of action are dismissed with prejudice and the second cause of action is dismissed without prejudice.

C. The Defendants' Motion for Sanctions is denied.

D. The Neufeld Default and the Olson Default are denied.

It is so ordered.